PEARSON, J.

FILED
2014 JUN 30 PM 6 32

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PATRICK J. SEMANCIK, II, ) | |
| ) | CASE NO. 1:13CV00629 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | **MEMORANDUM OF OPINION &** |
| Defendant. ) | **ORDER** [Resolving ECF No. 1] |

Magistrate Judge Vernelis K. Armstrong issued a report pursuant to 28 U.S.C. § 636 recommending that the decision of Defendant Commissioner of Social Security be affirmed. ECF No. 16. Plaintiff Patrick J. Semancik II filed objections. ECF No. 17. Defendant filed a response. ECF No. 18. For the reasons provided below, the Court overrules, in part, and sustains, in part, Plaintiff's objections to the report of the magistrate judge. The decision of the Commissioner of the Social Security Administration is affirmed.

## I. Factual & Procedural Background

Plaintiff, born September 4, 1968, applied for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff alleged he had a disability that began on August 30, 2006. The applications were denied. Plaintiff requested a hearing before an administrative law judge ("ALJ"). After a hearing in which Plaintiff and a vocational expert testified, the ALJ determined that Plaintiff was not disabled within the meaning

(1:13CV00629)

of the Act. Although the ALJ found that Plaintiff had severe impairments–degenerative arthritis in the mid-back, peripheral neuropathy, bipolar disorder, post traumatic stress disorder (provisional), and mixed anxiety and depressed mood–the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), there were jobs he could perform existing in significant numbers in the national economy. The decision became the final decision of Defendant when the Appeals Council denied Plaintiff's request for review. *See* ECF No. 12 at 6-29.

Plaintiff filed a complaint in this Court challenging Defendant's final decision. ECF No. 1. The matter was referred to Magistrate Judge Armstrong to prepare a report and recommendation in accordance with 28 U.S.C. § 636. The parties submitted merits briefs. ECF Nos. 13, 14, 15. Plaintiff raised numerous assignments of error in his merits brief. *See* ECF No. 13 at 1-2. The first three assignments of error asserted that the ALJ did not follow the "treating physician rule" when evaluating the opinions of Drs. Peter Laszlo, Vamsee Amirneni, and Thomas Zeck, and the ALJ's reasons for giving their opinions little weight were legally inadequate. The fourth and fifth assignments of error contended that the ALJ did not follow the requisite "weighing and explaining" rules in evaluating the opinions of Drs. Ronald Smith, Alice Chambly, and Vicki Warren, and the ALJ's reasons for giving their opinions little weight were legally inadequate. Plaintiff claimed in the sixth assignment of error that the ALJ's RFC finding failed to account for the ALJ's determination that Plaintiff had moderate limitations with respect to two "Paragraph B"[1] criteria: (1)

---

[1] "Paragraph B" criteria are used as part of the analytical process to determine whether certain mental disorders meet the required level of severity when determining whether a claimant is disabled. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing of Impairments, § 12.

2

(1:13CV00629)

social functioning and (2) concentration, persistent, or pace. In the final, *i.e.* seventh, assignment of error, Plaintiff challenged the ALJ's assessment of Plaintiff's credibility.

The magistrate judge issued a report recommending that Defendant's decision be affirmed. *See* ECF No. 16. According to the report, the first three assignments of error lack merit because Drs. Laszlo, Amirneni, and Zeck were not "treating physicians," therefore, the treating physician rule did not apply and their opinions were not entitled to controlling weight. The magistrate judge rejected the fourth and fifth assignments of error by concluding that the ALJ properly weighed the opinions of Drs. Smith, Chambly, and Warren, and substantial evidence supported the ALJ's decision. Finding the sixth assignment of error unavailing, the magistrate judge reasoned that "just because . . . Plaintiff had moderate difficulties in maintaining social functioning, concentration, persistence, and pace does not mean that the ALJ was required to make corresponding findings when assessing Plaintiff's residual functional capacity." Finally, the magistrate judge perceived no merit in the seventh assignment of error; she determined that the ALJ's evaluation of Plaintiff's credibility was appropriate and supported by evidence in the record.

Plaintiff timely filed five objections to the magistrate judge's report. ECF No. 17. Defendant filed a response. ECF No. 18. The Court will address each of Plaintiff's objections below.

## II. <u>Legal Standard</u>

**A. Review of Decisions Made By Commissioner of Social Security**

When reviewing the Commissioner's conclusions regarding disability benefits, the district court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or made findings of fact unsupported by substantial

3

(1:13CV00629)

evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir.2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (*quoting* 42 U.S.C. § 405(g)). Even if substantial evidence supports a contrary position, the court cannot overturn the decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

**B. Section 636 Review**

28 U.S.C. § 636 does not require a district court to review a magistrate judge's report to which no objections are filed. *Thomas v. Arn*, 474 U.S. 140, 145, 106 S. Ct. 466, 88 L. Ed. 2d (1986). When written objections are filed, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636 (b)(1)(C). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (b)(1)(C).

(1:13CV00629)

### III. Discussion

**A. Objections One, Two, and Three**

i.

Plaintiff's first three objections pertain to the magistrate judge's analysis regarding the opinions of Drs. Laszlo, Amirneni, and Zeck. *See* ECF No. 17 at 1-5. First, Plaintiff contends that the magistrate judge wrongfully *sua sponte* determined that these doctors were not treating physicians. Second, Plaintiff argues that the magistrate judge improperly evaluated the ALJ's analysis with respect to the opinions of the aforementioned doctors. In Plaintiff's view, the magistrate judge's conclusion that their opinions were not entitled to controlling weight was inadequate. Third, Plaintiff claims that the magistrate judge failed to scrutinize the opinions of non-treating and non-examining doctors more rigorously than that of treating doctors.

These objections flow from Plaintiff's claim on appeal that Drs. Laszlo, Amirneni, and Zeck, were treating doctors whose opinions were improperly discounted by the ALJ. Specifically, Dr. Laszlo reported that Plaintiff could stand or walk for two hours in an eight-hour workday and carry ten pounds on a frequent and occasional basis. ECF No. 13 at 6. He also opined that Plaintiff's ability to bend was markedly limited. ECF No. 13 at 6. Dr. Amirneni reported that Plaintiff could stand or walk for two hours in an eight-hour workday and carry five pounds frequently and occasionally. ECF No. 13 at 9. He opined that Plaintiff was moderately limited in his ability to bend. ECF No. 13 at 9. Dr. Zeck evaluated Plaintiff's mental faculties and found that Plaintiff: (1) was easily frustrated; (2) had low tolerances and persistence; (3) coped with stress poorly; (4) was "hyperactive almost to the point of being manic and . . . was rather anxious and negative"; (5) had

5

(1:13CV00629)

difficulty sitting still and focusing; and (6) was "rather unkempt." ECF No. 13 at 11. The ALJ assigned their opinions little weight. ECF No. 12 at 25-26. The ALJ found that Plaintiff's RFC allowed him to perform medium work as defined in 20 C.F.R. § 404.1567(c)[2] on the condition that Plaintiff was limited to simple routine and repetitive tasks involving no more than four steps and superficial contact with the public and coworkers. ECF No. 12 at 23.

ii.

The Court begins its analysis with the treating physician rule. The rule requires ALJs to generally give greater deference to the opinions of treating sources than to the opinions of non-treating sources because treating sources are likely to be the medical professionals most able to provide "a detailed, longitudinal picture" of the claimant's medical impairment and may bring a perspective that "cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal quotations omitted). The Sixth Circuit has explained the rule as follows:

> The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' *Wilson* [*v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (2004)] (quoting 20 C.F.R. § 404.1527(d)(2)). On the other hand, a Social Security Ruling explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.' Soc. Sec. Rul. 96-2p. 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

6

(1:13CV00629)

> and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

*Id.* A physician is a treating source if he or she has provided medical treatment and has had an ongoing treatment relationship with the claimant "'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)].'" *Id.* at 407 (*quoting* 20 C.F.R. § 404.1502).

iii.

The Court declines to adopt the magistrate judge's recommendation that Drs. Laszlo, Amirneni, and Zeck were not treating sources. Although the ALJ did not explicitly identify medical care providers whom treated Plaintiff as treating sources, all parties seemed to understand that these doctors satisfied the criteria. Tellingly, Defendant, in its merits brief, did not dispute Plaintiff's assertion that Drs. Laszlo, Amirneni, and Zeck, were treating sources. Rather, Defendant advanced the position that the ALJ properly accorded their opinions little weight. ECF No. 14 at 12-17. The Court notes that Defendant has previously taken the position in another case in this district that "seeing a claimant three times probably establishes a treatment relationship." ECF No. 20 at 16 in *Woods v. Comm'r of Soc. Sec*, No. 1:12CV00674 (N.D. Ohio November 1, 2012). The record reveals that Drs. Laszlo, Amirneni, and Zeck, each treated Plaintiff three times. ECF No. 13 at 2-3, 10. Furthermore, the ALJ's decision may soundly be read as attributing treating source status to these doctors, yet, notwithstanding their status, assigning little weight to their opinions.

Regulations impose certain requirements on an ALJ when he determines that a treating source's opinion is not accorded controlling weight. First, the ALJ must subject these opinions to

7

(1:13CV00629)

the multiple factor test outlined in *Blakely*, at 581 F.3d at 406, in order to ascertain the appropriate weight to be given. 20 C.F.R. § 404.1527(c)(2). Second, the ALJ is obligated to "give good reasons in [the] notice of determination or decision for the weight" ultimately assigned. 20 C.F.R. § 404.1527(c)(2). The magistrate judge's ruling does not reach those issues.

iv.

The Court's *de novo* review reveals that the ALJ appropriately assessed the opinions of Drs. Laszlo and Amirneni with respect to Plaintiff's physical impairments, and sufficiently articulated the reasons for discounting them. First, the ALJ underscored the infrequency of the examinations and the character of the treatment relationships as reasons for tempering the weight of these opinions. The ALJ noted: "the claimant testified that he saw [Dr. Amirneni] only three times since he is a new doctor"; "[a]ccording to claimant, he saw [Dr. Laszlo] twice at a free clinic"; and "[t]here are only two pages of treatment records from Dr. Laszlo dated November and December 2006" from the free clinic.[3] ECF No. 12 at 25-26, 52. In summary, the ALJ pointed out the few times these doctors actually saw Plaintiff, the inexperience of Dr. Amirneni, and the circumstances of Plaintiff's relationship with Dr. Laszlo in 2006 that yielded less-than-comprehensive treatment records.

Second, the ALJ reasoned that the opinions of Drs. Laszlo and Amirneni were not supported by the medical evidence and were inconsistent with substantial evidence in the record. He discussed and attributed great weight to the opinion of Dr. Mehdi Saghafi, a state consultative physician who

---

[3] Plaintiff testified at the hearing that he recalled seeing Dr. Laszlo on only two occasions between November, 2006, and December, 2006. ECF No. 12 at 52. The ALJ acknowledged that Plaintiff saw Dr. Laszlo a third time on June 19, 2007. ECF No. 12 at 25. Plaintiff's spotty memory of his relationship with Dr. Laszlo is an indication of its limited nature.

8

(1:13CV00629)

examined Plaintiff on August 17, 2007, and on January 15, 2010. ECF No. 12 at 384-89, 490-98. Dr. Saghafi concluded that Plaintiff was capable of: (1) sitting, standing, and walking six to eight hours a day; (2) lifting and carrying thirty to forty pounds on a frequent basis and forty-one to sixty-five pounds occasionally; (3) pushing, pulling, and manipulating objects; (4) operating hand and foot controlled devices; and (5) climb stairs. ECF No. 12 at 25, 494. The ALJ also gave great weight to the report of Dr. Teresita Cruz, a state agency physician who reviewed Plaintiff's file. ECF No. 12 at 499-506. The ALJ concluded that Plaintiff could perform a full range of medium exertion work based on Dr. Cruz's determinations that Plaintiff: (1) could occasionally lift or carry fifty pounds and frequently lift or carry twenty-five pounds; (2) could stand or walk for six hours in an eight hour workday; (3) could sit for six hours in an eight hour workday; and (4) had no limitations in his ability to push or pull devices.[4] ECF No. 12 at 25, 499-506.

In the ALJ's assessment, the opinions of Drs. Saghafi and Cruz were supported by the medical evidence as a whole. ECF No. 12 at 27. The ALJ discussed the following forms of evidence. Radiographs taken of Plaintiff's spine on December 1, 2006, showed "mild" degenerative changes in the mid and lower dorsal spine and good results in the lumbar spine. ECF No. 12 at 24. Radiographs taken on May 5, 2009, revealed "mild" distal thoracic anterior wedging that was "unlikely acute" and relatively normal lumbar appearance. ECF No. 12 at 24. On January 15, 2010, Dr. Saghafi diagnosed Plaintiff with degenerative arthritis in the mid-back. ECF No. 12 at 24. The physical examination also revealed that there was no evidence of muscle spasm in the back, there were no signs of joint pain or muscle wasting, and Plaintiff could perform straight leg raises of

---

[4] Dr. Cruz credited Dr. Saghafi's opinion in arriving at her own. ECF No. 12 at 505.

9

(1:13CV00629)

eighty degrees with both legs. ECF No. 12 at 24. In addition, Plaintiff reported that he only occasionally took aspirin for the pain. ECF No. 12 at 24. In December, 2010, Plaintiff was taking only Tylenol for his back on an as needed basis. ECF No. 12 at 24. Radiographs taken on February 14, 2011, of Plaintiff's thoracic and lumbar spine revealed negative (unremarkable) results. ECF No. 12 at 24. A physical examination performed on March 11, 2011, disclosed that Plaintiff had segmental limb pressures that were "mildly diminished bilaterally at rest" and "mildly diminished" left-below-the-knee amplitudes. ECF No. 12 at 24. The ALJ thus provided a reasonable explanation for why he found the relatively generous assessments by Drs. Saghafi and Cruz of Plaintiff's physical capacity to be consistent with evidence of Plaintiff's mild limitations. ECF No. 12 at 27.

In contrast, the ALJ observed that the severe assessments by Drs. Laszlo and Amirneni of Plaintiff's physical limitations appeared to be based on Plaintiff's subjective allegations, which, according to the ALJ, were not credible. ECF No. 12 at 24, 27. The ALJ recounted portions of the administrative hearing in which Plaintiff testified that he could be on his feet for at most three hours a day if he is permitted to sit, that he could not stand for more than one hour without bad arch pain, that his back hurts after walking for ten minutes, that he could sit four to five hours if permitted to get up when he needed to do so, and that he had difficulty lifting, bending, or carrying more than a case of Pepsi. ECF No. 12 at 23-24. The ALJ explained that although Plaintiff's impairments could reasonably be expected to cause the complained-of symptoms, Plaintiff's claims regarding the intensity, persistence, and limiting effects of the symptoms were not consistent with the objective medical evidence. ECF No. 12 at 24, 27. The ALJ also noted that the severity of the pain alleged

(1:13CV00629)

by Plaintiff did not square with his preferred method of treatment: taking hot showers, switching positions, stretching, and taking the occasional aspirin. ECF No. 12 at 24, 27.

Therefore, the ALJ's assessment of the opinions of Drs. Laszlo and Amirneni–that is, assigning them non-controlling, minimal weight–was neither improper nor unexplained. The ALJ also did not scrutinize their opinions more rigorously than that of non-treating physicians Drs. Saghafi and Cruz. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) ("[a] more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires"). The ALJ applied the proper level of scrutiny to both sets of opinions and found that those belonging to Drs. Saghafi and Cruz enjoyed a high degree of support and consistency with the record as a whole. He found the opinions of Drs. Laszlo and Amirneni did not.

v.

Regarding Plaintiff's mental capacity and limitations, the ALJ gave Dr. Zeck's assessment of Plaintiff's mental impairments little weight. Again, the parties and the undersigned agree that Dr. Zeck was a treating physician. The ALJ explained that little weight was given to Dr. Zeck's opinion because Dr. Zeck had seen Plaintiff only three times at the time the doctor issued his opinion of September 2009. And, the ALJ also explained that Dr. Zeck's letter of May 2011 was based on "treatment notes that were two years old" at the time the letter was penned. ECF No. 12 at 26.

The nature and scope of Plaintiff's mental impairments were understandably important to the ALJ's RFC finding. The ALJ determined that Plaintiff's RFC permitted him to do medium work except that Plaintiff "is limited to simple routine and repetitive tasks involving no more than 4 steps,

11

(1:13CV00629)

and limited to superficial contact with the public and co-workers." ECF No. 12 at 23.  In determining that Plaintiff could perform tasks involving up to four steps, the ALJ consulted the opinions of Drs. Zeck and state consultative psychologist Dr. Smith's findings of minimal, 1 or 2-step capabilities.[5]  ECF No. 12 at 26.  In particular, Dr. Zeck reported that Plaintiff had low tolerances, low persistence, poor ability to deal with stress, and was anxious and negative.  ECF No. 13 at 11.  Dr. Zeck also observed that Plaintiff was "quite hyperactive almost to the point of being manic" and "[i]t was difficult to get him to focus during our three sessions."  ECF No. 13 at 11.

The AlJ's written opinion reveals that he obviously did not ignore the opinions of Dr. Zeck.  In fact, the ALJ's stated "good reasons" for discounting Dr. Zeck's opinions.  An additional procedural requirement of the treating physician rule is that the ALJ, in discounting a treating physician's opinion, must provide "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p; *see also Wilson*, 378 F.3d at 544.  This notice requirement is significant because it ensures that a claimant who has been denied benefits receives fair process.  As importantly, the "good reasons" rule "'exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy

---

[5] The ALJ gave Dr. Smith's opinion "*very* little weight" and explained that Dr. Smith examined Plaintiff only once, in 2007, the doctor's report included no diagnostic findings and the severe limitations provided by Dr. Smith were based, in part, on the adverse affect of the claimant's continued drug usage (the record shows the claimant smokes marijuana regularly). ECF No. 12 at 391.  The ALJ also consulted state agency consultant Alice Chambly and attributed "little weight" to her opinion as well.  ECF No.12 at 16.

(1:13CV00629)

that [he] is not, unless some reason for the agency decision is supplied.'" *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)). An ALJ's failure to follow this requirement of providing good reasons "for explaining precisely how those reasons affected the weight accorded the [physician's] opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (*citing Wilson*, 378 F.3d at 544).

In this case, the ALJ provided "good reasons" within the meaning of 20 C.F.R. § 404.1527(c)(2) for not giving controlling weight to the treating physicians, in compliance with of 20 C.F.R. § 404.1527(c)(2). Moreover, while the ALJ appropriately subjected the opinions of Drs. Laszlo, Amirneni, and Zeck to the treating physician rule, the ALJ was also appropriately entitled to temper the weight attributed to their opinions, if those opinions (as happened in this case) were found not to be as "detailed," "longitudinal," or otherwise as reliable as one might typically expect from treating physicians. The ALJ did not subject the opinions of Drs. Laszlo, Amirneni, and Zeck, to more rigorous scrutiny than the opinions of non-treating doctors.

Based on the foregoing, the Court finds that Drs. Laszlo, Amirneni, and Zeck were treating physicians and that the ALJ gave their opinions the appropriate treatment, offered good reasons for the weight assigned, and declines to adopt portions of the magistrate judge's report and recommendation that is inconsistent with these findings. Accordingly, Plaintiff's Objections One, Two and Three are overruled, in part and sustained, in part.

(1:13CV00629)

### B. Objection Four

Plaintiff objects to the magistrate judge's recommendation that the Court should affirm the ALJ's finding that Plaintiff is capable of simple and routine tasks involving up to four steps. ECF No. 17 at 5. According to Plaintiff, the opinion of the state consultative psychologist, Dr. Smith–specifically, that Plaintiff's "ability to follow simple one or two step job instructions would appear to be good"–should not have been interpreted by the ALJ to mean that Plaintiff is, in fact, capable of four-step tasks. ECF No. 17 at 5.

ALJs "are not bound by any findings made by State agency medical or psychological consultants . . . ." 20 C.F.R. § 404.1527(e)(2)(i). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 404.1527(e)(2)(ii). A claimant's RFC finding must be based on all of the relevant evidence. 20 C.F.R. § 404.1545(a)(3). According to the ALJ, even though Dr. Smith opined that Plaintiff's ability to follow one– or two–step job instructions "would appear to be good," Dr. Smith did not impose one to two steps as Plaintiff's *ceiling* in the RFC context. ECF No. 12 at 26. The ALJ discussed the mental status examination administered by Dr. Smith that disclosed "good results." ECF No. 12 at 26. In that examination, Dr. Smith did not diagnose Plaintiff with any mental impairments. ECF No. 12 at 394. To the contrary, Dr. Smith found that Plaintiff: (1) was cooperative, friendly, coherent, and verbally fluent; (2) would elaborate in detail but otherwise was direct and to the point in his responses and well-organized in his thinking; (4) showed appropriate affective expression with a good range of effect; (5) was alert and in good contact with reality and well-oriented to time and place; (6) could

(1:13CV00629)

count backwards from twenty to one in nine seconds, count from one to forty by threes in fifteen seconds, and say the alphabet in six seconds; and (7) remember eight digits forward and five digits backward. ECF No. 12 at 393. Dr. Smith also observed that "[Plaintiff's] ability to maintain attention and concentration appeared to be fairly good" and that "his ability to relate to the public, coworkers and supervisors would appear to be fairly good." ECF No. 12 at 393-94. In addition, the ALJ noted Plaintiff's very limited treatment history: Plaintiff had quit going to counseling because he did not want to attend drug and alcohol rehabilitation; instead, Plaintiff smoked marijuana on a regular basis. ECF No. 12 at 26. Finally, the ALJ's decision found that Plaintiff socializes in bars and is capable of accomplishing daily tasks such as cleaning his apartment, washing dishes, doing the laundry, playing computer games, and going to the library. ECF No. 12 at 22.

The vocational expert testified that a one– to two–step ceiling is "very" vocationally limiting. ECF No. 12 at 71. According to the vocational expert, a person who is limited in this manner is "almost hospitalized if that's what their [sic] limited to. They couldn't put their pants on. they couldn't brush their teeth. They couldn't get out of bed." ECF No. 12 at 71. The evidence cited by the ALJ, therefore, reasonably supported his RFC determination that Plaintiff is able to perform simple and repetitive tasks involving more than one to two steps, and up to four steps.[6]

Consequently, the Court overrules Objection Four.

---

[6] Plaintiff argues that the ALJ did not interpret the opinions of other doctors as liberally as he did the opinion of Dr. Smith. This argument is of no avail. The ALJ's interpretation was supported by substantial evidence in the record and explained in the administrative decision.

(1:13CV00629)

### C. Objection Five

In the fifth and final objection, Plaintiff contends that the magistrate judge erroneously recommended that the ALJ's findings with respect to "Paragraph B" criteria did not have to be consistent with the ALJ's RFC finding. ECF No. 17 at 5.

The ALJ concluded that Plaintiff had moderate limitations with respect to two "Paragraph B" criteria: (1) social functioning and (2) concentration, persistent, or pace. ECF No. 12 at 22. As to the latter, the ALJ did not find moderate persistence or pace limitations but specifically determined that Plaintiff had moderate limitations with respect to concentration. ECF No. 12 at 22. The magistrate judge recommended, however, that "Paragraph B criteria are not equivalent to a [RFC] finding and are therefore not required to be made part of that assessment." ECF No. 16 at 28.

The Court declines follow the magistrate judge's recommendation. As conceded by Defendant, "it was the ALJ's responsibility to translate [Plaintiff's] moderate limitations into RFC findings." ECF No. 18 at 9; *see* S.S.R. 96-8P, 1996 WL 374184 at *1. Even so, the Court's *do novo* review reveals that the ALJ, in arriving at Plaintiff's RFC, adequately accounted for Plaintiff's moderate limitations in social functioning and concentration. With respect to social functioning, the ALJ limited Plaintiff's RFC to "superficial contact with the public and co-workers." ECF No. 12 at 23. The propriety of this limitation is supported by the evidence, which shows that Plaintiff is able to socialize with friends, visit bars, go to the library, take care of his mother, and attend parties. ECF No. 14 at 17. With respect to concentration, the ALJ reasonably limited Plaintiff's RFC to "simple routine and repetitive tasks involving no more than 4 steps." ECF No. 12 at 23. Plaintiff's contention that the ALJ "[d]isconnect[ed] the B-criteria ratings from the RFC finding" is, therefore,

16

(1:13CV00629)

unsupported. ECF No. 17 at 6. Furthermore, although Plaintiff maintains that his RFC must account for "significant" reductions in his ability to perform basic mental tasks as they relate to social functioning and concentration; ECF No. 17 at 5-6; Plaintiff does not at all demonstrate to the Court that the RFC found by the ALJ insufficiently accommodated this criteria.

Therefore, the Court sustains Objection Five but concludes that the ALJ's decision should be affirmed.

### IV. Conclusion

Based on the foregoing, the Court overrules, in part, and sustains, in part, Plaintiff's objections to the report of the magistrate judge.

For the reasons stated herein, the Agency's ruling is affirmed.

IT IS SO ORDERED.

June 30, 2014
Date

Benita Y. Pearson
United States District Judge